LORETTA LACOMBE *vs.* ANTONIO LACOMBE.

MARCH 30, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is a petition for divorce from bed, board and future cohabitation until the parties become reconciled. It was heard by a justice of the superior court who denied and dismissed the petition, and a bill of exceptions was thereafter duly prosecuted to this court by the petitioner. The only exception now relied on is to the decision of the trial justice.

The grounds alleged in her petition, which was filed September 15, 1949, were gross misbehavior, desertion and neglect and refusal for the period of one year next before the filing of the petition to provide necessaries for the subsistence of the petitioner, the respondent being of sufficient ability so to do. The ground of gross misbehavior has not been argued or pressed. In our judgment the trial justice was correct in ruling that on the evidence submitted petitioner did not establish desertion, and the decisive question in the case is whether she sustained the burden of showing that in the circumstances respondent failed to furnish her with proper support for the required statutory period. General laws 1938, chapter 416, §2. The respondent filed an answer in the nature of a cross petition alleging extreme cruelty on the part of petitioner and asking for a divorce from the bond of marriage. The transcript, however, shows that at the conclusion of his testimony he voluntarily withdrew the cross petition.

It appears from the evidence that the parties were married in 1934 and that they have no children. Both were employed when work was obtainable and by 1947 they had accumulated about $6000 which they held in a joint account. Up to that time the family conditions had been satisfactory and no difficulty between them had occurred. In March of that year petitioner's father and sister came from Canada and stayed with the parties in their small apartment until the following October when said relatives moved to a place of their own. There is some conflict in the testimony as to whether they were invited to the apartment by the petitioner or the respondent. It is not disputed, however, that respondent signed the necessary papers in connection with obtaining passports and a bond for petitioner's father and sister.

In the summer of 1947 friction began to develop between the parties. Respondent complained that petitioner con-

stantly nagged him and that the presence of her relatives in the apartment caused a crowded condition. Petitioner stated that they would move as soon as suitable quarters could be found. She also contended that respondent drank to excess, was out very late at night, came home intoxicated, and refused any cohabitation. In addition an argument arose concerning the joint bank account and respondent started legal proceedings to bring about a division thereof. This ultimately led to the entry of a decree in the superior court in February 1948 ordering a division of the account with the result that respondent received approximately $2500 after expenses and adjustments.

In December 1947 respondent was laid off at his place of work and in the spring of 1948 he obtained a position at the state institutions, the pay there being $140 a month before deductions. Although petitioner's father and sister had moved from the parties' apartment in October 1947, relations between respondent and his wife did not improve but became worse as time went on and in August 1948 he left the apartment permanently. Thereafter he lived at the state institutions where he had a room and obtained his meals.

Petitioner, who was forty-six years of age when the case was heard and who was under the care of a doctor, worked in a mill in 1948 but was laid off in December of that year. In April 1949 she also obtained a position at the state institutions where she worked four or five days a week but not in the same department as her husband. Those in charge offered to supply a room where they both could live but the respondent refused to accede to such an arrangement. Petitioner retained possession of the small apartment she and her husband had occupied, and she lived in it when not at the institutions.

She has expressed a willingness to become reconciled but in response to questions from the trial justice and elsewhere in respondent's testimony he refused in positive language any such reconciliation. He stated in substance

that he no longer cared for petitioner; that she could stay alone; that she worked all the time and could support herself; and he admitted that he refused to live with her. His general attitude is revealed by the following testimony: "I just will live my life alone, do what I wish, take care of myself."

During the year next before the filing of her petition, according to the testimony of the petitioner, respondent contributed toward her support the sum of $254.20 which she did not itemize. He introduced as exhibits, among others, eight rent receipts for $13.65 each, four money order receipts and one check receipt, each for $15, representing sums allegedly sent her or expended for her benefit within the above period. He also referred generally to the payment of a small medical bill. In the latter part of June and the early part of July 1949 respondent through his attorney notified petitioner and also the owner of the property in which the apartment was situated that thereafter the latter must look to the petitioner for the payment of the rent. Furthermore in April of that year respondent inserted in a daily newspaper a notice to the effect that he would not be responsible for debts contracted by anyone other than himself.

It appeared in evidence that from respondent's pay of $140 each month there were deductions for income tax, medical services, social security, and room rent which reduced the amount he actually received to approximately $106. From that sum respondent paid $7 a week for meals, thus leaving him almost $80 a month. He testified that he spent the greater part of this for incidentals such as tobacco, haircuts, laundry, cleaning, small insurance payments, clothing, and the like. He owned an automobile which he had purchased prior to the separation of the parties and stated that he spent money when he went out with friends. He also testified that at the time of the hearing in the superior court in February 1950 there remained of the $2500 he had received in 1948 only $200.

As long as the status of husband and wife existed between the parties respondent had the duty imposed by law to provide his wife with necessaries for her subsistence reasonably according to his ability. Nothing appears in the instant case to remove it from the application of that general rule. In giving his decision from the bench the trial justice held that petitioner had not sustained the burden of proving neglect to provide. He stated: "I wish it were otherwise." He also said in substance that his sympathy was with the woman and not with the man and his decision contained the following language: "I think she is short of the time."

Ordinarily this court will not disturb findings of fact made by a trial justice in a divorce case unless they clearly fail to do justice between the parties. *Warren* v. *Warren*, 33 R. I. 71; *Smith* v. *Smith*, 69 R. I. 403. However, in the instant case the basis of the trial justice's decision is not entirely clear and we feel that we cannot give it the weight usually accorded such a decision. It is our judgment that to some extent he misconceived the financial situation of the parties and the effect of the respondent's manner of making payments.

It appeared in substance that during the year next before the filing of petitioner's petition, which is the period to which our attention must be directed, the respondent for eight months at irregular intervals paid the rent of $13.65 for the apartment in which the petitioner was living. For four of those months he also contributed $15 a month towards her support making in all about $28 for each of such months. If the trial justice took the view that merely because of such payments respondent had entirely fulfilled his obligations for those four months and that therefore petitioner could not possibly establish his failure to support her for the full year next before the filing of the divorce petition, we are unable to agree with him. In view of all the circumstances appearing herein we are of the opinion that respondent's payments in those months did

not go to the extent of satisfying his legal obligation to support her reasonably in accordance with his ability and should not be so treated.

The evidence tended to show that while respondent was inclined to make some contribution to his wife's support for a time after he first left her, nevertheless he soon lost interest in doing so, particularly after she began to work at the state institutions early in 1949. His contributions at best were made irregularly throughout the year in question and although they resulted in some payments being substantially larger by the week or month than at other times, that fact does not necessarily furnish the respondent with a complete defense against petitioner's charge of neglect to provide. Undoubtedly the amount of each payment must be considered in relation to the fulfillment of the husband's legal obligation. However, the time of such payment and the total amount contributed by him during the year in the light of his earnings are also of importance in determining whether a bona fide effort had been made by him to discharge such obligation. In this respect each case must be determined on its own facts.

The evidence showed that during the year next before the filing of the petition respondent had a steady job and a substantial fixed salary. To that extent the instant case differs from the facts appearing in *Parker* v. *Parker*, 75 R. I. 27, and *White* v. *White*, 69 R. I. 116, which were divorce proceedings based on charges of neglect to provide. Further, in those cases there appeared particular circumstances which led this court to uphold the trial justice in denying the petitions. Such facts and circumstances are not present in the instant case.

Considering respondent's income and expenses during the year in question, to which we have hereinbefore referred particularly, especially the balance remaining after his own necessary expenses, and noting that in 1948 he had received the sum of $2500, in our judgment it was error for the trial justice to find that petitioner had not sustained

the burden of showing that during the year in question respondent had failed to contribute to her support reasonably according to his ability. In view of all the circumstances herein we are of the opinion that the decision of the trial justice was clearly wrong and failed to do justice between the parties. The petitioner's exception is sustained.

On April 9, 1951 the respondent may appear before this court to show cause, if any he has, why the case should not be remitted to the superior court with direction to grant the petition on the ground of neglect to provide.

*Harlow & Boudreau*, for petitioner.

*William J. McGair*, for respondent.